**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

AUTOMOBILI LAMBORGHINI SpA, an Italian company, and AUTOMOBILI LAMBORGHINI HOLDING SpA, an Italian company

Plaintiffs,

vs. Case No.: 2:07-CV-00266-JES-SPC

THE LAMBOSHOP, INC., a Florida corporation, and MICHAEL HEICK, an individual,

Defendants.

_____________________________________/

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the Plaintiff Automobili Lamborghini, SpA's Motion for Final Default Judgment against The Lamboshop, Inc., and Michael Heick (Lamborghini's "Final Default Judgment") dated February 11, 2008 (Doc. # 24). On April 14, 2008, the District Court referred the matter to this Court for an evidentiary hearing and Report and Recommendation (Doc. # 28) on Lamborghini's Motion for Final Default Judgment. The hearing was held before the undersigned on May 19, 2008 . The Plaintiffs appeared with counsel, however, the Defendants failed to appear for the hearing.

**FACTS**

The Plaintiffs, Automobili Lamborghini SpA and Automobili Lamborghini Holding SpA (Collectively, "Lamborghini") have been engaged in the design and manufacture of distinctive high performance exotic automobiles marketed and sold in the United States and Florida. Among the models of automobiles which Lamborghini has designed, manufactured and sold has been the Lamborghini *Countach*, *Diablo*, *Murcielago* and *Gallardo*. (Doc. # 1 at ¶ 2). Lamborghini distributes its automobiles to numerous dealers across the United States and the world. Lamborghini cars and references thereto have displayed across the United States and throughout the world for more than 40 years.

Lamborghini's corporate logos are registered in the United States Patent and Trademark Office as Registration No. 1622382, and Registration No. 1624722. (Doc. # 1 at ¶ 14, and Ex.2). Lamborghini has also trademarked its unique scissor door opening motion as Registration No. 2793439. (Doc. # 1 at ¶ 15, and Ex. 3).

Lamborghini states that its financial success depends largely upon its reputation amongst automobile enthusiasts and the public as a "striking, desirable, unique, and exceptional automobile", which has acquired secondary meaning in the market. (Doc. # 34, Declaration of Maria Lucia Lazzarini).

Defendant Lamboshop, Inc., advertises and sells four vehicles from its website, www.thelamboshop.com, the 2000S, the 2000V6, the 2000V8 and the 2000V8L. In addition Lamboshop manufactures and/or distributes accessories including car parts, emblems, badges and

logos to prospective buyers. Michael Heick also operates the website and engages in these activities. Because the Lamboshop's vehicles are confusingly similar to Lamborghini Automobiles, including the *Countach*, *Diablo*, *Gallardo*, *Murcielago*, and because Lamboshop sells merchandise bearing a likeness to federally registered trademarks, the Plaintiff Lamborghini states that it warned Lamboshop and Michael Heick that Lamboshop's cars and accessories violated Plaintiffs' federally-registered trademarks and demanded that Defendants cease their infringing conduct. (Doc. # 34, Affidavit of John C. Dotterrer, Esq. and exhibits thereto).

The Plaintiffs allege that despite their warnings and attempts at resolving the matter without legal action, Defendants continued to advertise, manufacture, and sell counterfeit Lamborghini merchandise and/or Lamborghini replica merchandise and fully completed turn-key kit cars.

Consequently, Plaintiffs filed their Complaint on April 30, 2007, alleging Florida common law trademark infringement (Count I), federal trademark false designation or origin (Secondary Meaning-Unfair Competition) (Count II), federal trademark infringement (Count III), Florida common law unfair competition, Florida Registration and Protection of Trademarks Act (Count V), and Florida Deceptive and Unfair Trade Practices Act (Count VI). Defendant Lamboshop failed to answer. Defendant Heick responded with a *pro se* letter on May 22, 2007. (Doc. # 10). The Clerk entered a default against The Lamboshop on June 14, 2007. (Doc. # 17). On June 27, 2008, the District Court struck a good portion of Defendant Heick's Answer and Affirmative Defense as having "no relation to the controversy", and finding that it contained numerous derogatory statements. (Doc. # 18).

Defendant Heick then failed to file a certificate of interested persons and corporate disclosure statement, and also failed to participate in a case management conference. After Defendant Heick failing to respond to an Order to Show Cause why a default should not be entered for failure to respond, a Clerk's default was entered against him on September 7, 2007. (Doc. # 22)

Thereafter, Plaintiffs filed the instant Motion for Final Default Judgment on February 11, 2008, to which Defendants have also failed to respond. (Doc. # 24). The Plaintiffs subsequently filed affidavits and declarations of their witnesses prior to the hearing on damages on May 19, 2008. (DE # 34)

**DISCUSSION**

The Plaintiffs argue that they should be granted default judgment and damages. If actual damage cannot be proven, then the Plaintiffs argue that they are entitled to statutory damages due to the Defendants willful actions. The Defendants did not appear at the hearing and made no arguments in response to the Plaintiffs' Motion.

In defaulting, the Defendants admit the Plaintiffs well-pleaded allegations of fact. S.E.C. v, Wright, 261 Fed. Appx. 259, 261 (11th Cir. 2008). The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. at 262. The defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir.2005). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines

the amount and character of damages to be awarded." Kingvision Pay-Per-View Corp., Ltd. v. El Torito Supermarket, Inc., 2007 WL 1794158 *2 (M.D. Fla. June 19,2007) (citing Miller v. Paradise of Port Richey, Inc., 75 F. Supp.2d 1342, 1346 (M.D. Fla.1999)). If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.1997) (citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. Id.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002); Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Damages may be awarded if the record adequately reflects the basis for the award via an evidentiary hearing or a demonstration by affidavits establishing the necessary facts. See Adolph Coors Co. v. Movement Against Racism and The Klan, 777 F.2d 1538, 1544 (11th Cir. 1985); United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979); Rolex Watch, USA, Inc., v. Brown, 2002 WL 1226863, *2 (S.D.N.Y. 2002) (Finding that where "the issue is statutory damages," the court can hold an inquest into damages "on a paper record" rather than through an in-person court hearing).

In the instant case, an Order to Show Cause for Defendant's Failure to Comply with the Court's Order Compelling Discovery was ordered for the same day as the hearing on the Motion for Entry of Final Judgment on Default. (Doc. # 30). The Plaintiffs attended the hearing but the Defendants did not appear nor provide any of the requested documents concerning Defendants' sales

and profits. As a result, the Plaintiffs argued for statutory damages and relied on previously submitted affidavits and declarations with accompanying documentary evidence in advance of the hearing.[1]

**1.Whether the Defendants are Liable for the Trademark Violations Alleged in Plaintiffs' Complaint**

As a result of their default, Defendants concede that they violated Lamborghini's federally registered trademarks. Therefore, the Court must determine if they are liable for Florida common law trademark infringement (Count I), federal trademark false designation or origin (Secondary Meaning-Unfair Competition) (Count II), federal trademark infringement (Count III), Florida common law unfair competition (Count IV), Florida Registration and Protection of Trademarks Act (Count V), and Florida Deceptive and Unfair Trade Practices Act (Count VI)

*Count* I : *Federal Trademark Infringement and Count III Florida Common Law Trademark Infringement*

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or

[1] Plaintiff has attached evidence in the form of both affidavits and declarations. Affidavits are sworn before a notary public or other official; unsworn declarations are not. In this instance, however, the declarations attached to the Plaintiffs' motion were declared under penalty of perjury and, thus, may be considered as evidence in support of the motion. Under 28 U.S.C. § 1746 unsworn declarations which are in writing and which are subscribed by the declarant "as true under penalty of perjury, and dated" can be treated with like force and effect as sworn declarations and affidavits. Tramell Real Estate Corp. v. Trammell, 748 F.2d 1516 (11th Cir. 1984)(Finding that an attached affidavit submitted with a bill of costs was unnecessary when a signed and dated declaration under penalty of perjury was attached since such a declaration ensured the accuracy of the insured costs. *See Also* Commodity Futures Trading Comm'n v. Infinite Trading Group, 2003 WL 21339265 (N.D.GA 2003) (relying on declarations in support of a motion for entry of default judgment). Petmed Express Inc. v. MedPets.ocm,Inc., 336 F. Supp. 2d at 1213, 1217, n. 1 (S.D. Fla. 2004).

colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." Thus, to prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause confusion. International Cosmetics Exchange, Inc. v. Gapardis Health & Beauty Inc., 303 F.3d 1242 (11th Cir. 2002); Frehling Enter., Inc. v. International Select Group, Inc., 192 F.3d 1330 (11th Cir. 1999). The analysis for Florida common law trademark infringement is the same as under the Lanham Act. Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F.3d 792, 802 (11th Cir. 2003). The Plaintiffs have satisfied the above three elements and established Defendants' liability for federal and Florida common law trademark infringement. Plaintiffs' mark has priority since Lamborghini has been selling its products for over 40 years, and while it is unknown how long Defendants have been counterfeiting Lamborghini products, it has not registered any trademarks. In establishing a website on the Internet, Defendants have used the infringing marks in commerce. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1194 (11th Cir. 2001). Lastly Defendants' defaults established that their replica automobiles, counterfeit merchandise, and website are likely to cause confusion among consumers as to whether the counterfeit badges, parts, and accessories are approved and authorized by Lamborghini.

*Count II Lanham Act Secondary Meaning Including Cyberpiracy*

Plaintiffs' Count II references Violation of Lanham Act pertaining to secondary meaning. The underlying allegations incorporate allegations under Unfair Competition and Cyberpiracy. The elements of an unfair competition claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

include the plaintiff showing (1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers were likely to confuse the two. Planetary Motion Inc., 261 F.3d at 1993). As discussed above, Plaintiffs have established that they have prior rights to the mark and that Defendants' marks are confusingly similar and likely to confuse consumers.

The Plaintiffs incorporate allegations under the Cyber piracy prevention section of the Lanham Act, 15 U.S.C. § 1125 (d). (Doc. # 1 at ¶25). This section makes a person liable for the "bad faith intent to profit" from a protected mark by using a domain name that is identical or confusingly similar. Liability for federal cyber piracy occurs when a plaintiff proves that (1) its mark is a distinctive or famous mark entitled to protection, (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and (3) the defendant registered the domain names with the bad faith intent to profit from them. American Appraisal Associactes, Inc. v. All American Appraisals, Inc., 2008 WL 449986 *2 (M.D. Fla. February 15, 2008) (detailing the standards creating liability for improper use of a trade mark); Shield v. Zuccarini, 254 F.3d 476, 482 (3rd Cir. 2001.)

Plaintiffs have met these elements, establishing through Defendants' default that their mark is distinctive, that the domain names are confusingly similar as Defendants simply use a well-known shorthand for Lamborghini, "Lambo" and attaches "Shop" to it. (Doc. # 34, Declarations of Daniele Fancello and Maria Lucia Lazzarini). The Plaintiffs have established the distinctiveness of the marks not only through Defendants' defaults but also by having registered the marks. Victoria's Cyber

Secret Ltd. Partnership v. Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001). With respect to the bad faith element, not only do Defendants establish their bad faith intent as a result of their default, but the Plaintiffs have submitted evidence that Cease and Desist demands were made on numerous occasions to the Defendants, and that after initially agreeing to comply, Defendants instead expanded their operations to further counterfeit Lamborghini models. (Doc. # 34, Affidavits of John C. Dotterrer, Esq. and Joseph Conway, CLA.). The evidence clearly demonstrates that the Defendants' intent was to counterfeit the Plaintiffs' automobiles. The Defendants' intent to counterfeit the Plaintiffs' product is clearly demonstrated by the Defendants' website which offers for sale and advertises the models as a Contact. The Defendants identify their model as a *Countach* Kit , they sell Lamborgini identification plates such as Lamborgini Bull Symbols, the *Countach* name plate, and the Lamborgini name to be added to the back of the replica car. They also show photos of the name placement on the vehicle and the make offers to install the name plates on the vehicles. Thus, it is apparent the Defendants were intentionally counterfeiting the Plaintiffs' product.

*Count IV Florida Unfair Competition*

To prevail on a Florida common law unfair competition claim, a plaintiff must prove that (1) the plaintiff is the prior user of the trade name or service mark, (2) the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning, (3) the defendant is using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already

established its trade name or service mark, and (4) as a result of the defendant's action or threatened action, consumer confusion as to the source or sponsorship of the defendant's good or services is likely. American United Life Ins. Co. v. American United Ins. Co., 731 F.Supp. 2d 480, 486 (S.D. Fla. 1990). Petmed, 336 F. Supp. 2d at 1218 (citing Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F. 3d 792, 802 (11th Cir. 2003) (holding that the analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act).

The Plaintiffs are clearly the prior user of the marks which began four (4) decades before Defendants. Plaintiffs have proved these elements. The Defendants' website clearly offers for sale Lamborgini trademark items such as the Lamborgini Bull Symbols, the *Contact* name plate, and the Lamborgini name to be added to the back of the replica car. Secondly, Defendants' defaults establish that Plaintiffs' trademarks have acquired secondary meaning in the automobile industry as a source of high-quality exotic automobiles. Indeed, Defendants even chose a domain name, Lamboshop, that is similar to Plaintiffs' trade name and nickname. Also, as previously discussed, Defendants' domain name and products are confusingly similar to Plaintiffs' registered marks. Finally, Defendants' defaults also establish that due to their conduct, consumer confusion as to the source or sponsorship of the Defendants' goods or services is likely to result.

**2. Statutory Damage**

The Plaintiffs seeks statutory damages under 15 U.S.C. § 1117(c) and 15 U.S.C. § 1117(d). District courts have wide discretion in awarding statutory damages. Cable/Home Communication

Corp. v. Network Productions. Inc., 902 F.2d 829, 852 (11th Cir. 1990); Petmed Express, Inc., 336 F. Supp. 2d at 1220.

*Whether Statutory Damages should be Awarded Under 15 U.S.C. § 1117(c)*

The Plaintiffs have exercised their option to seek statutory damages per counterfeit mark pursuant to 15 U.S.C. § 1117(c) rather than seeking actual damages. The statutory damage provision, § 1117(c), was added in 1995 because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept…making proving actual damages in these cases extremely difficult if not impossible." Tiffany Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003); Petmed, 336 F. Supp. 2d at 1219-1220. Several courts have found statutory damages especially appropriate in default judgment cases due to infringer non disclosure. Sara Lee Corp. v. Bags of New York, Inc., 36 F.Supp. 2d 161, 165 (S.D.N.Y. 1999). Here, Defendants refused to produce their sales and profit records, despite having been ordered to do so. (Docs. # 27, and 30).

Section 1117(c) states that "[i]n a case involving a counterfeit mark (as defined in section 1116(d) of this title)" a plaintiff may elect "an award of statutory damages." Section 1116 (d) states that in cases arising under 15 U.S.C. § 1114(1)(a) with respect to a violation that consists of using a counterfeit mark, a counterfeit mark means "a counterfeit of a mark that is registered on the principal register in the United State Patent and Trademark Office." 15 U.S.C. § 1116(d). As discussed above, Plaintiffs have established liability for federal trademark infringement pursuant to 15 U.S.C. § 1114(1)(A) and thus, have demonstrated that the Defendants' domain names, counterfeit

merchandise and replica cars are likely to confuse consumers as to the association of Lamboshop counterfeit and replicas with authentic Lamborghini automobiles and merchandise.

In determining the statutory damage award § 1117(c) further specifies that the amount varies depending on whether or not the use of the counterfeit mark was willful. 15 U.S.C. § 1117(c)(1)-(2). The statue reads in pertinent part:

> In any case involving the use of a counterfeit mark [ ] in connection with the sale, offering for sale, or distribution of goods or services [], the Court may award statutory damages [ ] in the amount of-
>
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful,
>
> not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). The Plaintiffs argue that the use of a counterfeit mark in this case was willful and therefore, pursuant to the statute an award for as much as a $1,000,000 per counterfeit mark is justified. The court has defined willful infringement "as when the infringer acted with actual knowledge or reckless disregards for whether its conduct infringed upon the plaintiff's copyright." Arista Records, Inc., v. Beker Enter., Inc., 298 F.Supp. 2d 1310, 1312 (S.D. Fla 2003).

Here, Defendants' willfulness can be established for several reasons. First, in Defendant Heick's own answer to Lamborghini's Complaint, Defendant maliciously uses derogatory language and descriptions regarding Lamborghini products. (Doc. # 10). Despite numerous cease and desist letters and the filing of the current suit, Defendants brazenly expanded their operation and in some

ways made the website more infringing. The Defendants continued to advertise and maintain the offending business even after notice was given by Plaintiffs. (Doc. # 34, Affidavit of John C. Dotterrer, Esq. and Joseph D. Conway, CLA. and attached exhibits thereto).

The Court infers from Defendants use of such a confusingly similar name and marks that Defendants had specific intent to confuse customers into believing that their shop was affiliated in some way with Lamborghini. The alternative reaches the same result, The Lamboshop knowingly sold counterfeit merchandise to deceive customers that its badges, and parts were authentic and authorized. Despite Plaintiffs numerous attempts at amicably resolving the matter, Defendants refused to cooperate and continued operating the website. Arista Records, 298 F. Supp. 2d at 1313 (finding willfulness when "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiffs Communication"); Louis Vuitton Malletier & Oakley v. Veit, 211 F.Supp. 2d 567, 583 (E.D.PA. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice."). Finally, the Court may also infer willfulness from Defendants default. Arista Records, 298 F. Supp. 2d at 1313; Petmed, 336 F.Supp. 2d at 1220.

Having established Defendants' willfulness, Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c)(2). Plaintiffs have requested $350,000 per category of infringement. Plaintifsf have identified two categories of infringement.

First, Lamboshop makes entire "turnkey" automobiles in the shape, style, and design of Lamborghini. They sell four different types of the Lamborghini model "*Countach*" on the website,

and there is also contemporaneous internet evidence that Lamboshop is developing a Lamborghini "*Gallardo*" replica. For these infringements Plaintiffs request $350,000.

Second, Lamboshop, manufactures and/or acts as a parts distributor for counterfeit Lamborghini badges, emblems, car parts, and logos. Given the availability of these products from www.thelamboshop.com, and its widespread internet presence on chat forums, Plaintiffs request $350,000 for this infringement.

Statutory damages under § 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct. Louis Vuitton, 211 F. Supp. 2d at 583. The Plaintiffs state that this amount will both compensate Lamborghini for the damage it has suffered as a result of Defendants' infringing conduct and deter others from engaging in similar infringing activities. While the record contains no evidence of the actual scope of the Defendants' sales, nor the number of hits the internet site received, given the scope of the internet site, and given the scope of the internet supermarket, such sale offerings are presumptively high and proscribed by the Lanham Act.[2] Given Defendants' willfulness and the fact that these marks appeared for sale on the internet, thereby reaching a substantial number of customers, the Court finds that a total of $700,000 ($350,000 per infringing mark) is a reasonable damages award pursuant to the statute. PetMeds. 336 F.Supp. 2d at 1221; Louis Vuitton, 211 F.Supp. 2d at 584.

[2] The Defendant's website does state that the LamboShop sold fourteen (14) cars in 1998 and had set a goal to sale twenty-four (24) of the automobiles in 1999. (Doc. # 34-3, p. 23).

Having established liability for federal cyberpiracy pursuant to 15 U.S.C. § 1125(d)(1), Plaintiffs also seek statutory damages under 15 U.S.C. § 1117(d). Section 1117(d) states that in a case involving a violation of section 1125(d)(1) "a plaintiff may elect…to recover, instead of actual damages and profits an award of statutory damages in the amount of $1,000 and not more than $100,000 per domain name." The statutory damages provision serves to deter wrongful conduct and to provide adequate remedies for trademark owners who seek to enforce their rights in court.

Plaintiffs argue that since Defendants registered their infringing domain names in bad faith, the Court could award Lamborghini the maximum amount of $100,000 which is permitted under the statute for the infringing website, however, Plaintiffs request $40,000 for the infringement. In Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., the court found that plaintiff's four domain names, victoriasexsecret.com, victoriassexsecret.com, victoriasexysecret.com and victoriassexysecret.con, infringed on defendant's federally-registered and famous mark "Victoria's Secret". The court further ruled that plaintiff had the bad faith intent to profit from these domain names because they could "potentially divert internet consumers looking for Victoria's Secret website to its own websites." Id. at 1346-1347. The court awarded the defendant $40,000 in statutory damages for the four domain names.

Here, Defendants have also registered domain names confusingly similar to Plaintiffs' registered marks that also sell Automobile products with the bad faith intent to profit from Plaintiffs' federally-registered marks. Therefore, a $40,000 award is appropriate given the bad faith intent on the part of Defendants in registering the domain name and continuing its use despite notice to stop.

**(3) Attorney's Fees**

The Plaintiff also seeks an award of attorney's fees pursuant to 15 U.S.C. § 1117(a), which allows an award of attorney's fees and costs for violation of sections 1125(a), (c), or (d). With respect to attorney's fees, the statute specifies that a court may award them in "exceptional cases." 15 U.S.C. § 1117(a). The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate, and willful. Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994). Further support for the awarding of attorney's fees is provided both by Defendants continued infringement even after receiving notice from Plaintiff and Defendants' failure to respond to the Complaint. Arista Records, 298 F.Supp. 2d at 1316. An award of attorney's fees and costs will serve the important functions of deterring future infringements, penalizing Defendants for their unlawful conduct, and compensating Plaintiffs for fees and costs. Id. The Court having found that the Plaintiffs established the Defendants acted willfully in registering the domain name and in selling replica cars and counterfeit products, the Court respectfully recommends the Plaintiffs are entitled to attorney's fees under § 1117(a) and recommends the Distirct Court reserve jurisdiction to determine the amount on motion from Plaintiffs.

**(4) Permanent Injunction**

The Plaintiffs argue that they are entitled to an order enjoining Defendants from further infringing any of Plaintiffs' federally-registered trademarks pursuant to 15 U.S.C. § 1116(a). Under the statute, a plaintiff is entitled to permanent injunctive relief if the plaintiff succeeds on the merits of his or her claims and if the equities involved favor injunctive relief. Neva, Inc. v. Christian

Duplications International, Inc., 743 F.Supp. 2d 1533, 1548 (M.D.Fla. 1990). Given the behavior of the Defendants to date in this action, and their refusal to respond to this Court's Orders and the Complaint, it is clear that absent this injunction, The Lamboshop will continue to use Plaintiffs' marks. Therefore, it is respectfully recommended that a permanent injunction be issued against the Lamboshop.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Plaintiffs Motion for Final Default Judgment Against Defendants (Doc. # 24) should be **GRANTED**.

1. Final Judgment is recommended in favor of Plaintiffs and against Defendants, Michael Heick and Lamboshop, Inc., jointly and severally, in the total amount of $740,000.00. This award encompasses the following amounts: (a) Statutory Damages pursuant to 15 U.S.C. § 1117(c) in the amount of $350,000.00 for counterfeiting the automobile and $350,000.00 for counterfeiting Lamborgini parts for a total of $700,000.00, (b) statutory damages pursuant to 15 U.S.C. §1117(d) in the amount of $40,000.00, and (c) attorney's fees and costs in an amount to be determined.

2. A Permanent Injunction is recommended in favor of Plaintiffs and against Defendants Michael Heick and Lamboshop, Inc., their respective agents, servants, employees, officers, successors, licensees and assigns and all persons acting in concert or participation with each or any one of them, to

(a) cease and desist any present or future use of Lamborghini's federally registered trademarks including any marks confusingly similar, and

(b) file with this Court and serve on Plaintiffs within thirty (30) days after entry of this order a report in writing under oath setting forth in detail the manner and form of compliance herein.

(c) Defendants and those persons in active concert or participation with it, be enjoined and restrained from using in the manufacture, advertising, offering for sale, sale or distribution of automobile conversions and goods of a similar nature, the designations Lamborghini, *Countach*, *Diablo, Gallardo*, and *Murcielago*, and any other designations which by colorable imitation or otherwise is likely to be mistaken for or confused with Plaintiffs' trademarks, or is likely to create the erroneous impression that Defendants or its products originate with Plaintiffs, or are endorsed by Plaintiffs, or are sponsored by Plaintiffs, or that Defendants and their products are connected in any way with Plaintiffs.

(d) That Defendants, and those persons in active concert or participation with it, be enjoined and restrained from infringing Plaintiffs' trademarks in the distinctive appearance of corporate names and logos, and the scissors door opening motion complained of in this Complaint.

(e) That all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession, custody or control of Defendants, and all plates, molds, matrices and other means of making the same, which might, if used, violate the injunction herein, be delivered up and destroyed as the Court may direct.

(f) That Defendants cease and desist from using the name or term "Lamboshop" and remove and deregister from the internet the website or domain, or domain name, www.thelamboshop.com.

(g) That Defendants cease and desist from conducting any of the activities described above on or through the internet or any other media or means of advertising.

3. The District Court should reserve jurisdiction in the matter of attorney's fees to determine the amount of attorney's fees, on motion from Plaintiffs.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** this __5th___ day of June, 2008.

Sheri Polster Chappell

**SHERI POLSTER CHAPPELL**
**UNITED STATES MAGISTRATE JUDGE**

Copies: All Parties of Record